ALLEN, Acting Chief Judge.
This appeal is brought from a final decree of foreclosure of a mortgage given to secure a construction loan. Appellee corporation, the mortgagee, filed its complaint to foreclose. Named as defendants were the mortgagor, a second mortgagee and *822 various mechanics’ lien claimants, one of which was appellant. Appellant filed an answer, a counterclaim, and a cross-claim against co-lien claimants alleging essentially that its lien was entitled to priority over the mortgage and other claims. The mortgage had been recorded on January 7, 1960. Appellee replied to the counterclaim and later filed a motion for summary final decree supported by the affidavit of its president setting forth the indebtedness due on the mortgage note and appellee’s entitlement thereto. Also filed in support of this motion were the affidavits of two attorneys as to reasonable attorneys’ fees. In its complaint appellee had alleged that it had obligated itself to pay its attorneys of record a reasonable fee. In opposition to the motion for summary decree appellant filed an affidavit of one Charles E. Smith, an officer of Carter Landscape Co., Inc., which was to the effect that the first actual work on the premises in question began prior to the date the mortgage was recorded. Since this affidavit apparently created a controverted issue of fact, the lower court denied the motion for summary decree and set the case for trial. Although the lower court did not so limit its pre-trial order on the motion, the trial was conducted on the sole issue of priority. Prior to the hearing, defendant-second mortgagee, 'filed an answer of general denial to appellant’s cross-claim.
Sometime after the hearing, the lower court entered its final decree of foreclosure. In the portions of said decree that are germane to this appeal, the lower court decreed that the equities were with the plaintiff-appellee, which entitled it to the full effect of its first mortgage; dismissed appellant’s counterclaim with prejudice; allowed interest from the date of the decree at the rate provid’ed for in the note and mortgage; awarded appellee attorneys’ fees in an amount equal to the lower of the two figures stated to be reasonable in the aforementioned two affidavits; and retained jurisdiction for making further orders necessary to the disposition of appellant’s cross-claim. At the hearing counsel stipulated that they would agree to a reasonable attorneys’ fee to be awarded by the court.
Appellant has raised six points in its appeal and we will deal with them in the order of their apparent importance.
The most salient point is presented as appellant’s Point Four which raises the question of priority, adjudicated at the hearing below. In order for appellant to prevail in his contentions it must be determined that such work as was performed on the premises in the cause prior to the recordation of appellee’s mortgage constituted visible commencement under the Mechanics’ Lien Law, § 84.03, F.S.A. The work done prior to the mortgage being recorded consisted mainly of excavating and filling to prepare the land for building purposes. From the evidence presented, the lower court found that said excavation and fill were not visible commencement of building activities. It therefore becomes necessary to allude to significant portions of the testimony on the question.
As aforesaid, the mortgage was recorded on January 7, 1960. Witness Henjum, who testified on behalf of plaintiff-appellee stated that he had gone on the property in March of 1959 and set out excavation flags to mark an area where muck and marl were to be dragged out and filled with sand. This witness, who was in some way connected with the building of houses in the subdivision, again visited the premises on January 9, 1960, two days after the mortgage was recorded. He stated that he went out to the property to make out a no-work certificate and to set out batter boards for the construction of a building. On cross-examination he defined “no-work” as meaning no actual construction of a building had yet been started. He further testified that there were no building materials of any kind present on the lot and that the only foreign matter noticeable was “a pile of debris, dirt of some kind” which later testimony identified as excess fill to be used *823 in landscaping. Witness Henjum also testified that from six to twelve inches of weeds or grass were growing on the filled excavation and that the filling would have had to have taken place long enough in the past to permit this amount of vegetation growth. He further stated that normally about one month is allowed for compaction of fill before starting to put in a foundation. On being questioned by the court this witness testified that a no-work certificate did not include preparation of the land for building but that there was nothing on the lot to indicate that a construction job had been started.
Witness Varnum, who was also attorney for defendant-second mortgagee, testified for plaintiff-appellee that he visited the premises on January 7th, 8th, 9th and 10th and a few weeks thereafter. On direct examination he stated that he saw no evidence of any construction or fill, and that weeds and grass at least a foot high were growing. On recross examination he testified as follows:
“Q. When you referred to no construction was going on what do you define construction as? A. Anything in the nature of improvement, or enhancement of vacant property to me is construction. Anything that would have any bearing on the improvement of any piece of property.
******
“Q. Does that include excavation and grading and filling the lot when you say no work was going on ? A. I definitely included excavation, yes sir, because I * * * am very familar with the excavating being a portion of the main construction.
“Q. Do you know whether any fill had been placed on this property prior to January 1960? A. You asked me that question before and you said immediately prior.
“Q. Prior to January, 1960? A. Not immediately prior, but my recollection is that there may have been some in June or July * * *
******
“Q. Do you know that the fill was placed upon the lot, but you just don’t remember what particular time it was, except the summer of 1959 ? A. That’s right, that is my belief.
“Q. Any fill that was on there at that time then you had excluded from your word definition no construction is that correct ? A. I have not excluded, I have included excavation. I know that construction includes fill.
“Q. It includes excavation? A. Yes sir.
“Q. Do you know whether any excavation was made upon this property at any time? A. No.”
A reasonable inference to be drawn from this testimony is that witness Varnum did know that fill had been placed on the property no later than the summer of 1959; that of his own knowledge he did not actually know of any excavation having been made prior thereto; and, at the time of his observation in January, the property did not appear to have been excavated and filled even though the same may have taken place.
Witness Smith, an officer of the firm which did the actual excavation and filling on the property testified on behalf of appellant. Of this testimony, that part most favorable to appellant was that the witness’ firm had delivered fill to the property up until September 10, 1959, the excavation of necessity having taken place beforehand; that excess fill was hauled away in November, 1959; that the last work done by this firm was some leveling around the property, accomplished by a bulldozer in a half hour on December 10, 1959; and that in December of 1959 it appeared to him that thf property was being improved.
Another witness produced by appellant established the furnishing of materials for which appellant claims a lien. Said ma *824 terials were furnished subsequent to the recording of the mortgage and appellant’s attorney stated at the hearing that to establish the priority of its lien appellant would have to rely on the excavation and grading that was done.
From the foregoing testimony it is apparent that the evidence conflicted on whether or not the excavation and fill constituted visible commencement of operations so as to render the attaching date of appellant’s lien prior to the date appellee’s mortgage was recorded. Visible commencement of operations is defined by the statute, § 84.01, F.S.A., as:
“ * * * the first actual work of improving upon the real property or the first delivery to the site of the improvement of materials which remain thereon until incorporated in the improvement, of such manifest and substantial character as to notify interested persons that the real property is being improved or is about to be improved.” (Emphasis supplied.)
Section 84.03, F.S.A., provides that all liens such as appellant’s “ * * * relate to and take effect from the time of visible commencement of operations * * Section 84.20, F.S.A., further provides that such liens have priority over mortgages recorded subsequent to the attachment date of said liens. Thus, if the excavation and fill performed prior to the recordation of the mortgage in this case constitute visible commencement, then appellant’s lien is superior to said mortgage.
The lower court, whose duty it was to determine a fact situation, apparently found that the excavation and fill operations described in the testimony were not of such manifest and substantial character as to notify interested persons, at least as of the date the mortgage was recorded. Appellant therefore had no right to rely on these operations to establish the attaching date of its lien. If work that has once been performed on property be deemed abandoned, a blanket lien for subsequent work performed cannot acquire as its attaching date the time when such prior work was going on. As was stated in Geiser v. Permacrete, Inc., Fla.1956, 90 So.2d 610, 613, cited by appellee:
“We are conscious of the possibility that the blanket lien theory if unrestrained could bring about a harsh application unjustily adverse to the interests of a mortgagee, such as in the case where visible work is commenced on one date, a mortgage is subsequently recorded, and at a much later date, under a separate contract, other materials are delivered or labor supplied and such materialman or laborer is given a lien dating back to the date operations were performed by one with whom the last materialman or laborer had no’ privity of contract. To avoid such an application, we feel it wise to say that, in order for one to benefit by the blanket lien theory, or relation back doctrine, the material delivered or labor or services performed must have been in connection with a single construction project going forward under a common plan, prosecuted with reasonable promptness to a conclusion and without material abandonment. * *" (Emphasis added.)
It may be that the improvements at issue in this case were being made in connection with a single project going forward under a common plan. Nevertheless, from testimony that excavation and fill had been performed on the property in question at least four months prior to the recording of the mortgage, and that, on the date the mortgage was recorded, the filled excavation had weeds and grass growing upon it, the lower court was entitled to find that the construction was not prosecuted with reasonable promptness so as to render the operations sufficiently manifest and substantial to notify interested persons that work was pro *825 gressing or that there had been no material abandonment.
Appellant also objects to the award of attorneys’ fees. It contends that it was improper for the court in drawing up its decree to give ex parte consideration to plaintiff-appellee’s affidavits attached to its previously denied motion for summary decree as proof that appellee had obligated itself to pay said fees when the record was otherwise devoid of proof of such obligation or payment. As a general proposition, parties litigant are required to plead and prove payment of or obligation to pay attorneys’ fees. There is no question that the obligation to' •pay said fees was pleaded in this case. In view of the stipulation of counsel at the Rearing to be bound by a reasonable fee ■awarded by the court, it appears that appellant has waived any right to formal proof.
In another point, appellant contends that the lower court committed error by ■dismissing appellant’s counterclaim with prejudice in paragraph 3 of the final decree when no motion for such dismissal had been made. Since paragraph 2 of the decree declares the equities to be with the plaintiff-•appellee, said paragraph 3 is deemed sur-plusage, its inclusion in said decree being in no way prejudicial to appellant.
Appellant also contends that the court should not have granted relief by way •of foreclosure without determining the ■•amount and attaching date of the various mechanics’ liens and fixing the relative position of said liens. This contention is without merit since the lower court retained jurisdiction for the purpose of disposing of .appellant’s cross-claims. .It is noted that the court also decreed that any excess realized on the foreclosure sale be deposited in the registry of the court, “ * * * there to remain until disbursed in accordance with further orders of this Court * * Such a provision affords appellant ample protection in securing funds which subsequently may be found to be due it.
Appellant further contends that in its decree the court failed to specifically name the mortgagor who is obligated for the indebtedness secured by the mortgage. This omission, appellant urges, renders said decree indefinite and subject to remand. We think the fact that the decree adopted by reference the note and mortgage at issue, both of which identify the primary obligor, satisfactorily disposes of this contention.
Finally, appellant argues that the court decreed a rate of interest from the date of the decree in excess of the six per cent prescribed by § 55.03, F.S.A. It was decreed that the indebtedness shall bear interest from the date of the decree at the rate prescribed in the note and mortgage. It is true that the note provided for two rates of interest, six per cent until maturity and ten per cent on deferred principal and interest. The mortgage deed, however, only makes reference to an interest rate of six per cent. It is observed, therefore, that the only rate of interest prescribed in both the note and the mortgage is six per cent, the legal rate. Furthermore, in its brief, appel-lee states that it desires only the statutory rate of interest, six per cent, from the date of the decree. Said decree is construed as awarding the legal rate of interest from its effective date.
From all of the foregoing, no reversible error having been discerned in any particular, the decree appealed from is hereby affirmed.
Affirmed.
WHITE and SMITH, JJ., concur.