553 So.2d 1248 (1989)
Barbara MILLARD, Individually, and Barbara Millard As Personal Representative of the Estate of Gordon Millard, Deceased, and Dudley Rice and Dorothy Rice, Appellants/Cross-Appellees,
v.
Charles D. BRANNAN, D/B/a Brannan and Iding Investments, Inc., et al., Appellee/Cross-Appellant.
No. 88-02956.
District Court of Appeal of Florida, Second District.
October 11, 1989.
On Motion for Rehearing December 15, 1989.
James A. Byrne and Warren J. Knaust of Knaust & Byrne, P.A., St. Petersburg, for appellants/cross-appellees, the Millards.
Ronald H. Schnell of St. Petersburg, for appellants/cross-appellees, the Rices.
John L. Riley of Riley and Henry, St. Petersburg, for appellee/cross-appellant.
PARKER, Judge.
All parties to this action seek review of different aspects of two judgments entered by the trial court. Although we affirm the majority of the trial court's findings, we reverse the amount of the damages award, including the date from which prejudgment interest shall commence.
Charles D. Brannan, d/b/a Brannan and Iding Investments, was a commercial landlord who leased building space. In December 1982, Gordon and Barbara Millard purchased a business known as the Treasure Island Deli from Dudley and Dorothy Rice for a total purchase price of $150,858.88. The Rices took back a $100,000 note and security agreement. The Rices had purchased the business from another person who originally executed the lease with *1249 Brannan. In each transaction, the parties assumed the lease with Brannan's consent.
In December 1983 or January 1984, after the Millards experienced financial difficulties, they requested and were granted by Brannan the right to pay one-half of the monthly rent due. The Millards began negotiating a sale of the business back to the Rices to whom they still owed $98,604.02. In March 1984, shortly before they ceased doing business, the Millards reached an agreement to sell the business back to the Rices. The terms of the deal were that the Rices would take back the business, along with an assignment of the leasehold interest, forgive the $98,604.02 debt, and pay the additional sum of $8,000 to the Millards from which bills, including utilities and rents would be paid, and that the Millards would transfer the business and equipment back to the Rices. This agreement was accepted orally and in writing on March 2, 1984. The agreement, however, was contingent upon the Rices securing a loan. The Rices received the approval on the loan on approximately March 12, 1984.
On March 5, 1984, the Millards ceased doing business at the deli. On March 8, 1984, Brannan, without posting or giving the Millards a three-day notice[*] or any other sort of notice of default, took control of the leased premises to the exclusion of the Millards by changing the locks. At the time Brannan changed the locks, the business contained a minimal food inventory and the electricity was still on line. The equipment, much of which was moveable and owned by the Millards, was still there. Brannan emptied the freezer foods into the dumpster, moved the equipment into storage, and sold the freezers to a new tenant. Less than two weeks before Brannan changed the locks, he had accepted a rent payment from the Millards of $4,000, of which $3,350 paid the rent through January 21, 1984. Brannan could not explain what happened to the remaining $650 contained in that payment.
Mr. Millard testified that Brannan agreed to let the Rices back in the deli. Mr. Millard testified that he told Brannan that the Rices had received approval for the loan in the amount of $25,000 from which the Millards would receive money that would enable them to make the rent current and pay the bills that were in arrears. Mrs. Rice testified that she also told Brannan that the Rices would pay him whatever was owed and that Brannan stated that that would be fine and that he would work with them.
Brannan verified that Mrs. Rice had called and advised him that she was obtaining the loan and that he was satisfied with *1250 the $25,000 figure. Brannan testified that he was aware the Rices planned to take back the deli and work something out with the Millards and that he was agreeable to letting the Rices back in the deli if something was worked out with the Millards. Brannan stated that he told the Rices he would do everything he could to help them and that he never gave them a deadline. These conversations took place before Brannan changed the locks.
Not until March 26, 1984, did Brannan advise anyone that he was having second thoughts regarding the arrangement. In mid to late April 1984, Brannan's attorney told the Millards' attorney that Brannan would not permit the Rices back in the deli.
Francis J. Sukiennik, a principal of the present tenant of the subject property, testified that he began negotiating with Brannan to lease the premises on the day that Brannan changed the locks. Sukiennik met with Brannan in person a week or two after that date, and the parties achieved a meeting of the minds to rent the subject premises. Sukiennik gave Brannan $3,000 for the walk-in cooler and a couple of freezers which had been located on the premises.
Mr. Millard testified that the equipment located in the deli was worth between $66,000 to $68,000. The only other evidence as to the value of the equipment came from Mr. Rice who testified that the equipment he sold to the Millards, if in the same condition, would still be worth between $40,000 to $50,000. Mr. Rice, however, admitted that he had not seen the equipment when the business closed.
Brannan initiated the action against the Millards and the Rices with a complaint for distress for rent. The Millards filed a counterclaim for wrongful eviction, trespass, tortious interference with business relationship, breach of contract, and conversion. The Rices filed a counterclaim for breach of an agreement to lease, conversion and destruction of property, interference with advantageous business relationship, and replevin of secured property. Following a nonjury trial on the distress for rent claim, the trial court granted the motions for directed verdict made by the Millards and the Rices and entered a judgment in their favor. At a trial on the counterclaims, the trial court entered a final judgment favorable to the Millards on their counterclaim against Brannan and against the Rices on their counterclaim against Brannan. In the section of the final judgment styled "Conclusions of Law," the trial court stated:
E. That at the time of the conversion the property had a value of Eight Thousand Dollars ($8,000.00), upon which sum MILLARDS are entitled to interest from January 4, 1988.
F. That none of the parties are entitled to recover attorney's fees from the other.
G. The Counter-Defendants are entitled to an offset against MILLARDS in the sum of One Thousand One Hundred Dollars ($1,100.00).
We affirm the trial court without further comment in all rulings except three. First, the only testimony as to the value of the equipment within the business came from Mr. Millard and Mr. Rice. Their testimony was unchallenged. The values given were from a high of $68,000 to a low of $40,000. While a reviewing court must not substitute its judgment for that of the trier of fact, Griffis v. Hill, 230 So.2d 143 (Fla. 1969), it is compelled to reverse a grossly inadequate award which is clearly arbitrary. Griffis, 230 So.2d at 145; Weaver v. Wilson, 532 So.2d 67, 69 (Fla. 1st DCA 1988). In this case, the trial judge's finding that the property had a value of $8,000 at the time of conversion is simply not supported by the evidence, and the award is grossly inadequate.
Secondly, the trial court allowed interest on the award to the Millards to run from January 4, 1988. A party, however, is entitled to prejudgment interest from the date of the loss when a claim becomes liquidated by a judgment fixing damages. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985); Smith v. Austin Development Co., 538 So.2d 128 (Fla.2d DCA 1989); Taylor v. New Hampshire Ins. Co. of Manchester, 489 So.2d 207 (Fla. 2d *1251 DCA 1986). Following that rationale, the Millards' date of loss of the equipment occurred when Brannan locked them out on March 8, 1984. Hence, they are entitled to prejudgment interest from that date.
We now turn to the Millards' and the Rices' assertions that the trial court erred in failing to award them attorney's fees. Although there was an attorney's fee provision in the lease which the parties signed, we note that neither the Millards nor the Rices sought attorney's fees in their pleadings or proof in the distress for rent action. There is no entitlement to attorney's fees when a party fails to plead or prove its entitlement to such an award. Coons v. Shriver, 429 So.2d 27 (Fla. 2d DCA 1983). We recognize that this holding is in conflict with the third district's decision in Protean Investors, Inc. v. Travel Etc., Inc., 519 So.2d 7 (Fla. 3d DCA), review denied, 518 So.2d 1277 (Fla. 1987). Protean Investors relies on the cases of Cheek v. McGowan Electric Supply Co., 511 So.2d 977 (Fla. 1987) and Finkelstein v. North Broward Hospital District, 484 So.2d 1241 (Fla. 1986) to support its conclusion that a party is not required to plead or prove at trial its entitlement to attorney's fees. Both Cheek and Finkelstein hold that when a party has pleaded its entitlement to attorney's fees, proof of those fees may be presented for the first time after final judgment. The distinguishing fact from our case and from Protean Investors is that the parties in Cheek and Finkelstein either had pleaded their entitlement to those fees or had made a demand for the fees in the complaint. See Cheek, 511 So.2d at 979; Finkelstein, 484 So.2d at 1242. In the present case, where the Millards and the Rices failed to plead their entitlement to or demand attorney's fees in the distress action and also failed to prove the fee issue at trial (so that we could say that it was tried by consent), then the trial court did not err in failing to award attorney's fees for the distress action. The Millards did seek attorney's fees in the "wherefore" clause of their counterclaim; however, that action was unrelated to the lease, and there is no other basis to award the Millards attorney's fees on their counterclaim. The Rices, of course, are not entitled to attorney's fees on their counterclaim because they did not prevail. For these reasons we are prohibited from reversing the trial court's order denying attorney's fees.
We affirm the trial court in all aspects of the judgments except that portion of the second judgment concerning the value of the property and the date of commencement of prejudgment interest awarded to the Millards in their counterclaim. We reverse those portions of the judgment and remand for further proceedings. The trial court may rule upon the evidence previously taken or may choose to hear additional testimony before ruling.
Affirmed in part; reversed in part; and remanded with instructions.
CAMPBELL, C.J., and THREADGILL, J., concur.

ON MOTION FOR REHEARING
PARKER, Judge.
We deny the motion for rehearing of appellant Barbara Millard, individually, and as Personal Representative of the Estate of Gordon Millard, Deceased. We, however, write to further explain this court's denial of attorney's fees as to Millard.
A review of the early cases in Florida reflects that a claim for attorney's fees must be pleaded specifically. Blount Bros. Realty Co. v. Eilenberger, 98 Fla. 775, 124 So. 41 (1929), reh'g granted, 98 Fla. 779, 124 So. 284 (1930) (a claim for attorney's fees based on a contractual provision); United States Fire Ins. Co. v. Dickerson, 82 Fla. 442, 90 So. 613 (1921) (a claim for attorney's fees provided for by statute); Price v. Boden, 39 Fla. 218, 22 So. 657 (1897) (a claim for attorney's fees based on statute); Mack Industries, Inc. v. Donald W. Nelson, Inc., 134 So.2d 821, 825 (Fla. 2d DCA 1961) (parties generally are required to plead payment of or obligation to pay attorney's fees). See also 12 Fla.Jur.2d Costs § 31 (1979). Recently this state's district courts of appeal have deviated from the general proposition requiring the specific pleading of a claim for fees; however, the opinions are inconsistent.
The first district, certifying the question to the supreme court, has held that a party *1252 seeking attorney's fees under the medical malpractice statute was not precluded from recovering statutory attorney's fees by failing to request them in the pleading. Heath v. PiRoman, 544 So.2d 1059 (Fla. 1st DCA 1989). But cf. Johnson v. Johnson, 346 So.2d 591 (Fla. 1st DCA 1977) (disallowance of statutory dissolution of marriage attorney's fees for failure to plead). The third district court has held that a party seeking attorney's fees under a theory of contract or statute does not specifically need to plead its claim for attorney's fees in order to obtain a fee award. Marrero v. Cavero, 400 So.2d 802 (Fla. 3d DCA), review denied, 411 So.2d 383 (Fla. 1981) (entitlement to attorney's fee based upon contract not defeated as long as timely motion made after judgment); Miami Lincoln Mercury, Inc. v. Kramer, 399 So.2d 1003 (Fla. 3d DCA), review dismissed, 408 So.2d 1094 (Fla. 1981) (failure to plead for statutory attorney's fees in answer will not defeat claim); Autorico, Inc. v. Government Employees Ins. Co., 398 So.2d 485 (Fla. 3d DCA 1981) (it is not essential, but better practice, to plead in the complaint or answer the entitlement to statutory attorney's fees). The fourth and fifth districts have held that generally it is necessary to request attorney's fees in the pleadings when claiming under a contract, but it is unnecessary to plead entitlement when claiming fees under a statute. Greiner Eng'g Sciences, Inc. v. Commercial Center Dev. Corp., 508 So.2d 525, 526 n. 1 (Fla. 5th DCA 1987); Altamonte Hitch & Trailer Serv., Inc. v. U-Haul Co. of Eastern Fla., 498 So.2d 1346 (Fla. 5th DCA 1986); Brown v. Gardens by the Sea South Condominium Ass'n, 424 So.2d 181 (Fla. 4th DCA 1983).
This court until recently has followed the early cases and held that a claim for attorney's fees must be specifically pleaded. Grasland v. Taylor Woodrow Homes Ltd., 460 So.2d 940 (Fla. 2d DCA 1984), review denied, 471 So.2d 43 (Fla. 1985); Coons v. Shriver, 429 So.2d 27 (Fla. 2d DCA 1983). This court, however, has recognized that where attorney's fees are permitted by statute, the parties' stipulation during the trial that the question of attorney's fees would be heard at a hearing subsequent to the final hearing would not preclude recovery of attorney's fees. Mainlands of Tamarac by the Gulf Unit No. Four Ass'n v. Morris, 388 So.2d 226 (Fla. 2d DCA 1980). More recently, in Barnes Surgical Specialties, Inc. v. Bradshaw, 549 So.2d 1189 (Fla. 2d DCA 1989), this court noted that failure to request statutory attorney's fees did not preclude an application for attorney's fees in a timely filed post-judgment motion.
In summary, although all districts have held that it is unnecessary to plead a claim for statutory attorney's fees, only the third district has held that a party is not required to plead a claim for attorney's fees based on contract. In this case, Millard's entitlement to fees is derived from a provision in the lease and therefore is a contractual right.[*] We have found nothing in our review of the cases to mandate a modification of our holding in our original opinion. The Millards' initial failure to plead their entitlement to or to demand attorney's fees in the distress action and their further failure to prove the fee issue at trial now prevents Millard's recovery of fees.
CAMPBELL, A.C.J., and THREADGILL, J., concur.
NOTES
[*] Section 83.05, Florida Statutes (1983) provides:

83.05 Right of possession upon default in rent; determination of right of possession in action or surrender or abandonment of premises. 
(1) If any person leasing or renting any land or premises other than a dwelling unit fails to pay the rent at the time it becomes due, the lessor has the right to obtain possession of the premises as provided by law.
(2) The landlord shall recover possession of rented premises only:
(a) In an action for possession under s. 83.20 or other civil action in which the issue of right of possession is determined;
(b) When the tenant has surrendered possession of the rented premises to the landlord; or
(c) When the tenant has abandoned the rented premises.
(3) In the absence of actual knowledge of abandonment, it shall be presumed for purposes of paragraph (2)(c) that the tenant has abandoned the rented premises if:
(a) The landlord reasonably believes that the tenant has been absent from the rented premises for a period of 30 consecutive days;
(b) The rent is not current; and
(c) A notice pursuant to s. 83.20(2) has been served and 10 days have elapsed since service of such notice.
However, this presumption does not apply if the rent is current or the tenant has notified the landlord in writing of an intended absence.
Section 83.20(2), Florida Statutes (1983) provides:
Where such person holds over without permission as aforesaid, after any default in the payment of rent pursuant to the agreement under which the premises are held, and 3 days' notice in writing, requiring the payment of the rent or the possession of the premises, has been served by the person entitled to the rent on the person owing the same. The service of the notice shall be by delivery of a true copy thereof, or if the tenant be absent from his last or usual place of residence, by leaving a copy thereof at such place.
[*] Although the distress for rent statute, § 83.18, Fla. Stat. (1983), provides for the prevailing defendant to be awarded costs, it is only through the lease that attorney's fees are included as costs.